

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
09/10/2012

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 11-40437 |
| RONALD L. DOMINGUE; aka | § | CHAPTER 13 |
| DOMINGUE | § | |
| | § | |
| Debtor(s). | § | DAVID R. JONES |

**MEMORANDUM OPINION**
(Docket No. 27)

On March 26, 2012, the Court held a hearing to consider confirmation of the Debtor's Amended Chapter 13 Plan filed February 20, 2012 [Docket No. 27] (the "Plan"). The sole objection to the Plan was filed by Financial Freedom, a division of OneWest Bank, FSB ("FFB"). FFB asserts that the Plan (i) violates 11 U.S.C. § 1322(b)(2); and (ii) fails to satisfy 11 U.S.C. § 1325(a)(5). For the reasons set forth below, the Court disagrees. Accordingly, FFB's objection is overruled and the Plan is confirmed. A separate order confirming the Plan will be entered.

**Factual Background**

1.  Based on the Court's review of the pleadings filed by the parties in this case and the uncontested evidence adduced during the March 26, 2012 confirmation hearing, the following relevant facts are admitted by the parties:

- James Domingue is the Debtor's uncle.

- James Domingue died on January 11, 2011.

- The Debtor filed his chapter 13 case on December 6, 2011 [Docket No. 1].

- The Debtor acquired the real property located at 1708 14th Street, Galena Park, Texas (the "Property") from James Domingue as his heir pursuant to the terms of James Domingue's will.

- In his bankruptcy schedules, the Debtor claimed the Property as his homestead [Docket No. 5].

- The Property is the Debtor's primary residence.

- At the time the Debtor acquired his interest in the Property, the Property was encumbered by an "Adjustable Rate Note (Home Equity Conversion)" and "Adjustable Rate Home Equity Conversion Deed of

Trust" entered into on or about December 24, 2007 (the "Reverse Mortgage").

- The Debtor has no personal liability on the Reverse Mortgage.

- The Reverse Mortgage is currently held by FFB.

- The outstanding balance owed to FFB under the Reverse Mortgage on the petition date was $51,109.15.

2. At the confirmation hearing, the Debtor offered the testimony of a certified residential appraiser who testified that the current value of the Property is $15,000. The Debtor, a builder, testified that the value of the Property is approximately $15,000-$16,000. Both the appraiser and the Debtor testified that the Property is subject to a variety of defects, including major foundation failures, a non-operating plumbing system, termites and electrical system failures. FFB asserts that the Property is worth either (i) $41,565.00, based on the current assessed value maintained by the Harris County Appraisal District; or (ii) $25,000, based on the Debtor's original Schedule A. No other valuation evidence was offered. Based on the record in this case, the Court finds that the value of the Property is $15,000.

## The Plan

3. Under the Plan, the Debtor proposes to bifurcate FFB's claim. More specifically, under paragraph 4.A. of the Plan, the Debtor proposes to pay FFB the sum of $15,000 as a secured claim over the life of the Plan with interest at the rate of 5.25%. The Debtor proposes to treat the balance of FFB's claim as a general unsecured claim. The Plan provides that general unsecured creditors are expected to receive a distribution equal to approximately 1% of their claims under the Plan.

4. FFB filed an objection to the Plan on March 20, 2012. In its objection, FFB asserts that the Plan (i) violates 11 U.S.C. § 1322(b)(2) as the Plan "modifies" its rights by failing to provide for the full payment of its entire claim; and (ii) fails to satisfy 11 U.S.C. § 1325(a)(5) because the Debtor's valuation of the Property is too low.[1]

## Analysis

5. The Court has jurisdiction over this contested matter pursuant to 11 U.S.C. § 1334. The confirmation of a plan is a core proceeding under 28 U.S.C. 157(b)(2)(L). The Court has constitutional authority to enter a final order in this matter.

6. FFB first asserts that the Plan violates 11 U.S.C. § 1322(b)(2). Specifically, FFB asserts that the Debtor must pay the full amount of its claim since its collateral is the Debtor's

---

[1] FFB previously asserted that the Debtor could not assume the Reverse Mortgage due to a lack of privity. FFB abandoned that argument after being reminded of Judge Isgur's decision in *In re Carter*, No. 09-35587, 2009 WL 5215399 (Bankr. S.D. Tex. December 28, 2009) during the hearing on its motion to modify the automatic stay.

principal residence. At first blush, FFB's position appears sound. However, FFB misses a critical exception to the general rule set forth in § 1322(b)(2).

7. The Reverse Mortgage is a unique financing instrument. In its motion to modify the automatic stay, FFB noted this fact and gave the following detailed explanation in support of its motion:

> As authorized by and defined by § 50, Article XVI of the Texas Constitution, a Reverse Mortgage allows a senior homeowner (age 62 or over) to access the equity in his/her home without having to repay the mortgage debt during the homeowner's lifetime. The homeowner borrows against the equity in his/her home and receives funds from the Lender, only without having to make monthly payments to the Lender. There are no income or credit worthiness requirements that prevent many senior citizens from accessing the equity in their homes. The advances to the homeowner by the Lender would only become payable on specific occasions, such as the Borrower's death, failure to maintain occupancy, or sale of the property by the homeowner, at which time the Lender would require repayment in full. The reverse mortgage is a non-recourse loan and the Borrower has no personal liability for payment during their lifetime so long as they maintain occupancy and keep up the property tax and insurance payments [See §§ 50(a)(7) and 50(k through p), Art. XVI of the Texas Constitution, which authorizes reverse mortgage as a type of debt that may be secured by a valid lien against homestead property and defines its terms]. Repayment is secured by the property and is typically repaid from sale of the property. Neither the Borrower's estate nor a Borrower's heir has any liability for payment in the event of deficiency after sale of the property.

[Docket No. 25, page 3].

8. An examination of the original Adjustable Rate Note (Home Equity Conversion) (the "Note") reflects an even more unusual arrangement. The Note provides that payment is due only "upon receipt of a notice by Lender requiring payment in full, as provided in Paragraph 7 of this Note." [FFB Proof of Claim Exhibit]. Paragraph 7 of the Note provides that the Lender <u>may</u> require immediate payment upon the borrower's death, sale of the property or certain other events of default. [FFB Proof of Claim Exhibit]. The Court could not find, nor did the parties identify, an absolute due date under the Note. Moreover, FFB presented no evidence that it ever sent any notice to James Domingue seeking payment of the Note. Accordingly, the Court must examine FFB's conduct regarding its intent to collect the amounts due and enforce its rights under the Reverse Mortgage. FFB served notice that it asserted a claim under the Reverse Mortgage in this case on March 15, 2012. FFB filed a motion to modify the automatic stay to foreclose its lien on February 17, 2012 [Docket No. 25].[2] The resulting analysis is the same regardless of which date is chosen.

---

[2] In its motion to modify the automatic stay, FFB sought authority to foreclose its lien. In order to seek such relief, FFB would have to have given notice that payment was due as specifically set forth in the Note.

3 / 4

9.   Section 1322(c)(2) provides that "in a case in which the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for payment of the claim as modified pursuant to section 1325(a)(5) of this title." Section 1325(a)(5) provides that in order to be confirmed, a plan must provide for equal monthly payments to a secured creditor equal to the allowed amount of its secured claim. Thus, § 1322(c)(2) provides an exception to § 1322(b)(2) which allows a home mortgage claim to be bifurcated into secured and unsecured components if the mortgage comes due prior to the expiration of the plan term. *American General Finance, Inc. v. Paschen (In re Paschen)*, 296 F.3d 1203 (11th Cir.), *cert. denied*, 537 U.S. 1097 (2002).[3] Applying the foregoing to the present facts, the Reverse Mortgage became due approximately 73-99 days into the plan term. Consequently, the Bankruptcy Code requires the Debtor to bifurcate BBF's claim into secured and unsecured claims. *See* 11 U.S.C. §§ 506, 1325(a)(1). FFB's first argument is overruled.

10.   FFB next argues that if § 1325(a)(5) applies, the Debtor's valuation of $15,000 is too low. However, "saying it's so does not make it so." FFB had the opportunity to adduce valuation evidence at confirmation. It chose to offer nothing more than *ad valorem* tax data. To the contrary, the Debtor presented an appraiser that provided an expert opinion and a basis for that opinion. He even testified why *ad valorem* tax data is unreliable. The Debtor himself also testified regarding the Property's value and the problems plaguing the Property. As set forth above, the record in this case leads to the Court to conclude that the Debtor's valuation is more reliable. FFB's second argument is overruled.

11.   The Court concludes that the Plan satisfies the requirements of 11 U.S.C. § 1325(a) and therefore must be confirmed. A separate order confirming the plan will issue.

**SIGNED: September 10, 2012.**

_____
DAVID R. JONES
UNITED STATES BANKRUPTCY JUDGE

---

[3] "The legislative history of the provision (§ 1322(c)(2)) states that it was intended to overrule the decision of the Court of Appeals for the Third Circuit in *First National Fidelity Corp., v. Perry*, 945 F.2d 61 (3d Cir. 1991) which held that a debtor could not utilize section 1325(a)(5) to provide for a home mortgage protected from modification by section 1322(b)(2). Section 1322(c)(2) thus expressly provides that certain mortgages may be modified and provided for under section 1325(a)(5). Specifically, this may occur if the last payment on the original payment schedule for the mortgage is due before the final payment under the plan is due." 8 COLLIERS ON BANKRUPTCY ¶ 1322.17, at 1322-57 (16th ed. 2011).